UNITED STATES of America,
Appellee,

v.

Catherine BRIGHT,
Defendant-Appellant.

No. 754, Docket 74–2447.

United States Court of Appeals,
Second Circuit.

Argued March 10, 1975.

Decided May 21, 1975.

J. Truman Bidwell, Jr., New York City, for defendant-appellant.

T. Barry Kingham, Asst. U. S. Atty., S. D. N. Y. (Paul J. Curran, U. S. Atty., and John D. Gordan III, Asst. U. S.

Atty., S. D. N. Y., of counsel), for appellee.

Before MOORE, MANSFIELD and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

Catherine Bright appeals from a judgment of conviction entered on November 6, 1974, after a jury trial in the United States District Court for the Southern District of New York, Hon. Constance Baker Motley. She was found guilty on three counts of possession of stolen mail in violation of Title 18, United States Code, Section 1708, and received a six month suspended sentence and six months probation.[1]

Appellant presses two points on this appeal. First, she argues that the District Court committed error in failing to permit the defense to introduce psychiatric evidence to negate her knowledge that the checks were stolen, although no insanity defense was tendered. Second, she argues that the District Court committed reversible error in its charge to the jury with respect to the element of knowledge required under 18 U.S.C. § 1708. We affirm the District Court on the first of these contentions, but reverse on the charge to the jury.

It is uncontested that appellant had been in possession of some nine welfare checks at various dates during 1972, and that these checks had been stolen from the mail. The checks had been in the possession of one Fred Scott, an acquaintance of appellant's "boyfriend" Leslie; Scott gave Bright the checks to cash for him on the pretense that he had no bank account of his own. Appellant admitted at trial that she had cashed or deposited the checks in question in the two accounts she had at her bank, but swore that she had not known that they were stolen. She testified that Scott had told her that he had received the checks in payment for debts or rent owed to him.

She testified that on one occasion, when a check she had cashed had been returned unpaid and her account charged accordingly, she confronted Scott who made good on the loss. After that incident, she cashed three more checks for Scott. The three counts of her conviction are based on her cashing the latter three checks.

I.

At trial, the appellant's defense was based upon her purported lack of knowledge that the checks had been stolen and her naive belief that everything Scott told her was true. Appellant testified in her own behalf accordingly.

In support of her contention that she did not know the checks were stolen, appellant sought to introduce testimony by Dr. Norman Weiss, a psychiatrist who examined appellant on August 21, 1974 before trial. The trial court excluded the proffered testimony and appellant assigns the exclusion as reversible error on alleged constitutional grounds under the Fifth and Sixth Amendments to the United States Constitution.

Though Dr. Weiss examined appellant only once, he was prepared to testify, as indicated in a letter he addressed to defense counsel, that "though I do not consider Ms. Bright to have been suffering mental illness, I believe that her dependent, childlike character structure unconsciously 'needed' to believe that these men would never involve her in illegal activities and that Leslie [her boyfriend] could do no wrong. I believe that at the time of the alleged crime, because of this unconscious 'need,' she did not think that the checks had been stolen."

1. The indictment charged the defendant with twelve counts of possession of stolen mail in violation of 18 U.S.C. § 1708. She was found guilty on three counts and not guilty on four counts. Five counts had been dismissed upon the government's motion, three before evidence had been introduced and two after the jury had begun its deliberations.

Section 1708 reads in pertinent part: "Whoever . . . unlawfully has in his possession . . . any . . . mail . . . which has been so stolen, . . . knowing the same to have been stolen, . . . [s]hall be fined. . . . or imprisoned . . . ."

He later suggested, "I do not believe that she knew that the checks that she allegedly possessed were stolen as a result of her need to deny the possibility that the men involved would in any way take advantage of her. This passive-dependent personality disorder rendered her incapable of understanding this."

■ Appellant argues that the proffered psychiatric testimony should have been admitted for the purpose of showing her inability to know that the checks had been stolen, a requisite element under Section 1708. Counsel for appellant before Judge Motley specifically disavowed the assertion of an insanity defense under United States v. Freeman, 357 F.2d 606 (2 Cir. 1966). We hold the trial court did not err in rejecting the testimony.

The proffered testimony was a weak reed. The hurried diagnosis prepared for an advocate for purposes of trial would simply tender an opinion by the psychiatrist, not that appellant was suffering from mental disease, or that she lacked substantial capacity either to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of law, but that, on the basis of this single examination, the psychiatrist was of the opinion that appellant had a "passive-dependent personality disorder." A. L. I. Model Penal Code § 4.01 (Proposed Official Draft 1962); United States v. Freeman, supra. Couched in simpler language he was prepared to testify that appellant was a gullible person but a person unaffected either by psychosis or neurosis.

Nor was the proffered testimony to show that appellant did not have the capacity to form a specific intent to commit the crime. Concededly she was quite capable of the mental responsibility required to cash a stolen check and to recognize circumstances that would lead to the suspicion that it was stolen. The interposition by Dr. Weiss was simply that this particular man, Leslie, was in such a relationship to the passive-dependent personality on trial that she had to believe him when he told her the checks were not stolen.

In dealing with forensic psychiatry we must be humble rather than dogmatic. The mind and motivation of an accused who is not on the other side of the line under the Freeman test, is, by the judgment of experience, left to the jury to probe. The complexity of the fears and long-suppressed traumatic experiences of a lifetime is in the personality of all of us. All humankind is heir to defects of personality.

To transmute the effect of instability, of undue reliance on another, of unrequited love, of sudden anger, of the host of attitudes and syndromes that are a part of daily living, into opinion evidence to the jury for exculpation or condemnation is to go beyond the boundaries of current knowledge. The shallower the conception the deeper runs the danger that the jury may be misled. See United States v. D'Anna, 450 F.2d 1201, 1204–05 (2 Cir. 1971). And cf. United States v. Brawner, 153 U.S.App.D.C. 1, 471 F.2d 969, 998–1002 (1972) (en banc) (mental condition of specific intent).

In short, appellant asks us to go beyond the boundaries of conventional psychiatric opinion testimony. We think the testimony offered was not sufficiently grounded in scientific support to make us reach or, indeed, cross the present frontier of admissibility. On the instant appeal we need decide no more than that Judge Motley did not abuse her discretion in rejecting the opinion evidence.

II.

We turn then to the contention that the District Judge erred in charging the jury on the element of knowledge required under 18 U.S.C. § 1708, and that this constituted reversible error. In the circumstances we agree.

■ The issue of knowledge was the only issue in dispute at appellant's trial. In all cases involving the receipt or possession of stolen goods, the definition of the requisite "knowledge" that the goods were stolen, required for a conviction,

makes the difference between guilt and innocence. The test is not a technical one requiring a grudging adherence to some abstract standard. The standard should always embrace the ultimate concept of *mens rea*. A negligent or a foolish person is not a criminal when criminal intent is an ingredient. On the other hand, the lack of direct proof that the defendant knew that the goods were stolen is, in the nature of the case, not fatal to conviction. Circumstantial evidence may suffice, but the jury must understand that to convict it must find beyond a reasonable doubt that the defendant willfully and knowingly possessed the goods, knowing them to have been stolen. Without that abiding belief on the part of the jury, there should be no conviction.

Though some may say, quite properly, that subtle nuances in a judge's charge fall on deaf ears, there is no assurance that this is so. The juror's difficult task of probing the mind and will of another person is hard enough with the aid of a charge that balances the countervailing considerations. His verdict becomes suspect when he has not had the benefit of a balanced instruction from the court.

■ The draft of the Model Penal Code of the American Law Institute, *supra,* provides:

"When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." § 2.02(7)

This coupling of the "high probability" test with its negation by an actual belief of the non-existence of the fact has been accorded "at least nodding approval in Leary v. United States, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) and perhaps more than that in Turner v. United States, 396 U.S. 398, 416 & n. 29, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)." United States v. Jacobs, 475 F.2d 270, 287 (2 Cir.), cert. denied sub nom. La-

velle v. United States, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).

In *Jacobs*, the trial court charged:

"Guilty knowledge cannot be established by demonstrating merely negligence or even foolishness on the part of a defendant. However, it is not necessary that the government prove to a certainty that a defendant knew the bills were stolen. Such knowledge is established if the defendant was aware of a high probability that the bills were stolen, *unless the defendant actually believed that the bills were not stolen.* . . .

"Thus if you find that a defendant acted with reckless disregard of whether the bills were stolen *and* with a conscious purpose to avoid learning the truth the requirement of knowledge would be satisfied, *unless the defendant actually believed they were not stolen.*" (Emphasis added). 475 F.2d at 287, n. 37.

This court affirmed a conviction based on this charge because it was a balanced charge which had not permitted the "reckless disregard" portion of the charge to stand in isolation.

The problem arose more recently in United States v. Brawer, 482 F.2d 117, 128 (2 Cir. 1973) where the court sustained the charge as a balanced charge. There Judge Pollack charged:

"An inference of the existence of knowledge may be drawn from evidence that the defendant was aware of a high probability that the bills were stolen, *unless the jury were to find that the defendant actually believed the bills were not stolen.*" (Emphasis added). 482 F.2d at 128, n. 14.

We turn to the record on appeal.

In the main charge, the District Judge properly charged that "before you find the defendant guilty, you must find beyond a reasonable doubt that she knew the checks were stolen at the time she possessed the checks. If you find that the defendant did not know the checks

were stolen, then of course you must acquit the defendant."

The court also charged, after explaining the statutory presumption of recent possession, see Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), as follows:

"You may also find that the defendant had the requisite knowledge if you find that she acted with reckless disregard as to whether the checks were stolen, but with a conscious effort to avoid learning the truth, even though you may find that she was not specifically aware of the fact which would establish the stolen character of the checks."

This was in no way balanced by an instruction that if the jury nevertheless found that "the defendant actually believed that the bills were not stolen" they should acquit.

The distinction became acute when the jury sent a note to the Court, reading as follows:

"Request clarification of the term 'reckless disregard' as pertains to whether defendant had knowledge of whether checks were stolen."

Here the jurors were zeroing in on the very concern of the American Law Institute in the Model Penal Code and we believe they should have been given the "clarification" requested.

A colloquy ensued in which defense counsel stated his position quite articulately, ending his argument as follows:

"In the *Jacobs* case, the Court said, 'Guilty knowledge cannot be established by demonstrating merely negligence or even foolishness on the part of the defendant, and the Second Circuit cited that as one of the reasons why the conscious avoidance type language was permissible, because it was counterbalanced by language saying, "But it isn't enough just to be foolish or whatever." '

"Here we are getting from the defendant's point of view only the most damning part of this kind of charge without the other balancing factor."

Despite this pointing up of the problem, the Court simply reread a single portion of the earlier charge as follows:

"You may also find that the defendant had the requisite knowledge if you find that she acted with reckless disregard as to whether the checks were stolen *or* were [sic] a conscious effort to avoid learning the truth, even though you may find that she was not specifically aware of the facts which would establish the stolen character of the checks." (Emphasis added).

Except for a technical question about the form of the verdict, the jury asked no further questions and later returned a verdict of guilty on three counts.

Thus, at the crucial stage with the single element at issue, the defendant's "knowledge" that the checks were stolen, the instruction given was insufficient to give the jury the proper balance required. It failed to give "clarification" to the term "reckless disregard." It concluded with the statement in the disjunctive that either "reckless disregard" *or* a conscious effort to avoid learning the truth would be enough.

We assume that the use of the disjunctive "or" standing by itself would not require us to reverse. See United States v. Sarantos, 455 F.2d 877, 881–82 (2 Cir. 1972).[2] But we cannot escape the feeling that the lack of juxtaposition of the choices available in a balanced way was fatally erroneous, especially in the light of counsel's acute objections on the very point. That is not to say that a balanced result can only be achieved by the use of particular words and phrases and, of course, generally a charge must be read as a whole.

We are constrained to reverse this conviction, however, since we are not convinced that the jury applied the proper

2. The court there said: "We do, however, urge the use of 'and' rather than 'or' in future charges on this issue." 455 F.2d at 882.

standard in weighing appellant's "knowledge," and, hence, her guilt or innocence.

Judgment reversed and remanded for a new trial.