**UNITED STATES of America, Appellee,**

v.

**Jacqueline DOZIER, Appellant.**

**No. 823, Docket 74–2594.**

United States Court of Appeals, Second Circuit.

Argued April 8, 1975.

Decided June 10, 1975.

Rehearing Denied Aug. 27, 1975.

Certiorari Denied Dec. 8, 1975.

See 96 S.Ct. 461.

Sheila Ginsberg, New York City (William J. Gallagher, The Legal Aid Society, New York City), for appellant.

Samuel H. Dawson, Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., and Paul B. Bergman, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.*

LASKER, District Judge.

Jacqueline Dozier appeals from conviction after trial on a one-count indictment of aiding and abetting the possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), in the United States District Court for the Eastern District of New York, Orrin G. Judd, *J.* Dozier was sentenced under the Youth Correction Act, 18 U.S.C. § 5010(e) to a 90-day period of study and observation. Although appellant does not challenge the sufficiency of the evidence against her, she contends that the trial judge erred in portions of his charge to the jury and that the conviction must be reversed because the verdict was rendered by less than twelve competent jurors, in violation of Rule 23(b) Federal Rules of Criminal Procedure.

* Of the United States District Court for the Southern District of New York, sitting by designation.

The facts are uncomplicated. A friend of appellant's, Mary Lou Dantzler,[1] arranged to sell cocaine to two New York City undercover policemen. According to plan, the officers drove to Dantzler's home on the night of December 11, 1973. Dantzler and Dozier met them on the street. Dantzler told one of the policemen that she had the package but that the "deal" would take place elsewhere. While Dantzler went to get the cocaine, appellant, at Dantzler's request, entered the officers' car and directed them to a movie theater. When they reached the theater, the three went inside and waited approximately fifteen minutes for Dantzler to arrive. While they were waiting, appellant assured her companions that Dantzler did "straight business." When Dantzler arrived, she and one of the officers entered the men's restroom while Dozier and the other officer stood guard outside the door. Shortly afterward, Dantzler and Dozier were arrested. According to appellant's version, Dantzler had asked her, without further explanation, whether she would escort the men to the movie theater. Dozier denied overhearing any conversation outside Dantzler's house, and testified that she did not ask Dantzler where she was going or why, at the time Dantzler went to pick up the cocaine. She maintained that the wait for Dantzler at the theater did not arouse her suspicions and that she did not want to know the reason for the rendezvous in the men's restroom.

Appellant first claims error in the judge's charge on the question of con-scious avoidance of knowledge. He stated:

"I refer to the word knowingly, knowledge can be proved by a defendant's conduct and by all the facts and circumstances surrounding the case. No person can intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate; and so, knowledge can be established by direct or circumstantial evidence just as any other facts in the case, and you can consider the peculiarity if you consider as such of going to a theater with a couple of strange men without the one who introduced him to you at 10:00 o'clock at night, in the middle of the second show and see whether that is a circumstance that implies knowledge that there was a cocaine transaction to take place in an area where Miss Dozier, Sr. said cocaine was all over the neighborhood, or whether it was just an adventurous girl who thought here was a chance to go out, she had an older friend and she would have an interesting time. If you find from all the evidence beyond a reasonable doubt either that the defendant knew that she was helping in a cocaine transaction, or that she had a conscious purpose to avoid finding out the identity of the substance so as to close her eyes to the facts, you could find sufficient evidence to find her guilty beyond a reasonable doubt. But it's up to you whether there is a reasonable doubt."

■ We find nothing objectionable or erroneous in the charge nor in the court's supplemental instructions on the subject.[2] In one of two appeals decided

---

1. Dantzler was indicted with appellant and pleaded guilty immediately prior to trial.

2. Later on the jury sent a note asking:

   If the defendant went to the theater thinking there was an illegal transaction but had no idea it was cocaine, does this make a difference?

   In response, Judge Judd reiterated to the jury portions of his initial charge on knowledge and conscious avoidance of knowledge and added:
   ". . . I would say it does make a difference to the extent there are different penal-

ties for different crimes, so I don't think aiding and abetting in something less than drugs could justify a conviction here, but cocaine and heroin are in the same category. If she believed it was drugs but wasn't sure what kind, that would affect her guilt of aiding and abetting . . . No person can intentionally oppose knowledge by closing her eyes to facts that should prompt her to investigate. So in order to convict you have to find either that she knew that some kind of narcotic drug was involved . . . or had knowledge of sufficient facts that she

last year which approved similar instructions, this court stated:

> " 'studied ignorance' of a fact may, under decisions of the Supreme Court and of this court, constitute an awareness of so high a probability of the existence of the fact as to justify the inference of knowledge of it." *United States* v. *Joly*, 493 F.2d 672, 675 (2d Cir. 1974).[3]

See also, *United States* v. *Olivarez-Vega*, 495 F.2d 827 (2d Cir. 1974). Moreover, *Joly* specifically held, in rejecting a contention similar to that made here, that an inference of knowledge that the subject of the transaction is narcotics "does not automatically disappear because other evidence arguably points the other way." *United States* v. *Joly, supra*, 493 F.2d at 676. See, also, *United States* v. *Olivarez-Vega, supra*, 495 F.2d at 830. Contrary to appellant's argument, neither *Joly* nor *Olivarez-Vega* turned on the fact that the narcotics were at some point in the defendants' possession, but pointed to that item as one of the several pieces of evidence which could support an inference of knowledge. *United States* v. *Joly, supra*, 493 F.2d at 676; *United States* v. *Olivarez-Vega, supra*, 495 F.2d at 830.

■■ Dozier's other objections to the charge are not persuasive. The trial court's instruction on the credibility of a defendant as a witness was not improper, *United States* v. *Tyers*, 487 F.2d 828 (2d Cir. 1973); *United States* v. *Mahler*, 363 F.2d 673 (2d Cir. 1966); *United States* v. *Sullivan*, 329 F.2d 755 (2d Cir.) *cert. denied*, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964) and, particularly in the context of the entire charge, was not prejudicial. Nor did the trial court transgress its legitimate role by its brief comments on the evidence. *United States* v. *Touraine*, 428 F.2d 865, 869 (2d Cir. 1970).

Dozier's final point is based on a note given to the trial judge after the jury had been deliberating for a day. The note stated:

> "One juror feels there is no way for any person to make a decision regarding any person's guilt. This decision is reserved to God. The juror will *not* discuss the case, the facts, or anything about it. Maybe you can re-direct what we *must* do. That we cannot avoid a decision. It is not a matter of trying to convince anyone, but a matter of no discussion." (Emphasis in original.)

On receipt of the note the judge recalled the jurors and instructed them as follows:

> ". . . I think . . . it is necessary to reach a decision. I can't force anybody to act contrary to his religious beliefs in God, it's something that the court should have known before, and I think there is a duty to make a decision to vote one way or the other. I'm not saying that you should give up a vote that you believe in because you are in a minority, but I do say you can't simply say I'm not going to vote."

The jury resumed deliberations and returned a guilty verdict shortly thereafter. The jury was then polled and each juror affirmed the verdict.[4] Appellant argues that the jury's note establishes that the verdict was rendered by fewer than twelve competent jurors, in violation of Rule 23(b), Federal Rules of Criminal Procedure. We disagree. While the note indisputably indicates that at the time it was sent the juror in question was reluctant to discharge a juror's duty to vote, it does not necessarily follow that the juror was inattentive at trial or failed to observe or absorb what was said during deliberations. However, we need not speculate as to

---

was just trying to prevent herself from having knowledge, deliberately closing her eyes."

**3.** Citing *Turner* v. *United States*, 396 U.S. 398, 416 n. 29, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary* v. *United States*, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United*

States* v. *Jacobs*, 475 F.2d 270, 287–288 (2d Cir. 1973), *cert. denied sub nom. Thaler* v. *United States*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53; *United States* v. *Squires*, 440 F.2d 859, 863–864 (2d Cir. 1971).

**4.** Transcript of Trial, pp. 28–29.

the juror's processes since it is clear that he or she took the judge's instructions to heart by reaching a decision. Indeed, all twelve jurors so indicated in open court when the jury was polled. In the circumstances, therefore, the incident is not "clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service" which justifies setting aside the verdict. *United States* v. *Dioguardi*, 492 F.2d 70, 78 (2d Cir. 1974).

■ Appellant contends that at the very least the case should be remanded for a hearing to determine the hesitant juror's competence to serve. We would have been inclined to remand for a hearing had trial counsel requested such an examination after the verdict had been rendered, moved for a mistrial or objected to the trial court's supplemental instruction. Indeed, had a hearing been requested at that time, it would have been improper not to hold one. *United States* v. *Gerth*, 328 F.2d 460, 463–464 (2d Cir. 1964). However, no such objections or requests were made and in view of the passage of five months since trial, we believe that the recollection of the jurors would be so dimmed as to render a hearing fruitless.

The judgment is affirmed.

ON PETITION FOR REHEARING

PER CURIAM:

■ The petition for rehearing based on this court's decision in *United States* v. *Bright,* 517 F.2d 584 (2d Cir. 1975) is denied. While the trial counsel in *Bright* made "acute" objections to the claimed lack of balance and fairness in the portion of the charge on the subject of conscious avoidance of knowledge, counsel in the present case made no objection to the jury charge and certainly there was nothing plainly erroneous in the judge's instructions.