**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rene ESQUER–GAMEZ, Enrique Platt-Lopez, Guillermo Platt-Lopez,
Defendants-Appellants.**

**Nos. 76–2734, 76–2745 and 76–2799.**

United States Court of Appeals,
Ninth Circuit.

March 31, 1977.

Jo Ann D. Diamos, argued, Asst. Federal Public Defender, Tucson, Ariz., for defendant-appellant Esquer-Gamez.

Sidney F. Wolitzky, argued, Tucson, Ariz., for defendant-appellant Guillermo Platt-Lopez.

Joe F. Tarver, Jr., argued, Robert J. Hooker of Hooker, McDonald & Morgan, Tucson, Ariz., for defendant-appellant Enrique Platt-Lopez.

Irma E. Dirst, Asst. U. S. Atty., argued, William C. Smitherman, U. S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before DUNIWAY, CHOY and KENNEDY, Circuit Judges.

DUNIWAY, Circuit Judge:

Three co-defendants were tried together and appeal from judgments of conviction of importing, possessing and distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 952(a) and 960(a)(1). We affirm in the case of Enrique Platt-Lopez (Enrique), and we reverse the convictions of Rene Esquer-Gamez (Esquer) and Guillermo Platt-Lopez (Guillermo).

## FACTS

While in Phoenix, Arizona, Enrique, a Mexican citizen, was introduced to Ron Umbower, a government informant. Umbower asked Enrique whether Enrique could buy cocaine for him in Mexico. Enrique agreed to "look into it." From November, 1975, to February, 1976, Umbower contacted Enrique approximately twenty times regarding the possibility of obtaining cocaine. Umbower told Enrique that his "people" were upset with Enrique, who could earn a substantial amount of money if he cooperated. Finally, Enrique agreed to meet with the "dealers," and at the meeting produced an ounce of cocaine, which the "dealers," actually narcotics agents, purchased. At another meeting on April 13, 1976, the agents showed Enrique $26,000 in cash, which they said they were willing to exchange for 20 ounces of cocaine. The transaction was to be completed three days later in Nogales, Arizona. On the morning of April 16, Enrique contacted the agents at their hotel room in Nogales and gave them three ounces of cocaine. He then took one of the agents to the restaurant of the hotel and called Esquer over to them, after which the three men proceeded to the restroom. There, Esquer handed Enrique an opaque package and left. Next, Guillermo, Enrique's brother, entered the restroom, gave Enrique a similar package and left. Each of the packages contained three ounces of cocaine.

## I. *Enrique Platt-Lopez's Appeal, No. 76–2745.*

Enrique raises three issues: (1) that he was entrapped as a matter of law; (2) that a remark made by the prosecutor was prejudicial; and (3) that the court erred in not striking a prejudicial and unresponsive statement made by a prosecution witness. We find no merit in any of them.

(1) Entrapment is established when it is shown that a government agent has persuaded an unwilling person to commit a crime. The crucial factor is the predisposition of the defendant rather than the degree of government participation. The question is one of fact, and on appeal we view the evidence in the light most favorable to the government. *Hampton v. United States*, 1976, 425 U.S. 484, 488, 96 S.Ct. 1646, 48 L.Ed.2d 113; *United States v. Rus-*

*sell*, 1973, 411 U.S. 423, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366; *United States v. Reynoso-Ulloa*, 9 Cir., 1977, 548 F.2d 1329; *United States v. Hermosillo-Nanez*, 9 Cir., 1976, 545 F.2d 1230, 1232.

■ Enrique argues that he was not predisposed to commit the crime, pointing out that he did not provide cocaine immediately upon Umbower's initial request and that he only cooperated after repeated inducements, approximately twenty in number. Yet Enrique never refused to become involved. The first time Umbower asked him whether he could obtain cocaine in Mexico, Enrique said that he would "look into it." He supplied cocaine to the agents at a meeting before the one at which he was arrested, and he was willing to, and did, do so again. Moreover, the only inducement offered by the informant and the other agents was money. "The defense of entrapment, while protecting the innocent from Government creation of crime, is unavailable to a defendant who, motivated by greed and unconcerned about breaking the law, readily accepts a propitious opportunity to commit an offense." *United States v. Reynoso-Ulloa, supra*, 548 F.2d at 1338. On the evidence, the jury could find beyond a reasonable doubt that Enrique was predisposed to commit the crime. *United States v. Hermosillo-Nanez, supra*, 545 F.2d at 1232.

■ (2) During redirect examination of one of the agents, the prosecutor asked a leading question. In response to an objection, he explained that he was "trying to avoid bringing out some other matters that should not come out." Enrique argues that the statement implied that he had been engaging in narcotics activities before his arrest and that that implication could well have "tipped the scales" against him. While it is improper for a prosecutor to remark on any prior criminal conduct of a defendant that has not been made a part of the record, *United States v. Martinez*, 9 Cir., 1975, 514 F.2d 334, 343, the prosecutor's statement in this case is not such a remark. The preceding questions dealt with Enrique's voluntary participation and his active role in the negotiations. While the prosecutor might have been more careful, there was no reference to any prior criminal conduct by Enrique. Finally, even if the jury could have interpreted the statement as Enrique suggests, the evidence against him was overwhelming. Thus, the statement was harmless, Rule 52(a), F.R. Crim.P.; *United States v. Jones*, 9 Cir., 1972, 460 F.2d 325.

■ (3) Enrique argues that the trial court should have stricken a prejudicial, unresponsive statement by one of the agents. The agent had described the field tests which he performed on the substance given to him by Enrique and testified that he had not "snorted the cocaine." The first question on cross-examination by defense counsel, and the answer, were as follows:

BY MR. HOOKER:

   Q  Mr. Rogers, you wouldn't tell us if you did snort it, would you?

     MR. HAWKINS: Objection, Your Honor, I think that is highly improper.

     THE COURT: No, he may answer.

   A  I'm willing to take a polygraph, if that is what you are leading to.

(Reporter's Transcript at 290)

Enrique claims that the answer requires a new trial. The argument verges on the frivolous. Counsel got the sort of answer that the question deserved.

## II. *Esquer-Gamez's and Guillermo Platt-Lopez's Appeals, Nos. 76–2734 and 76–2799.*

Both Esquer and Guillermo maintain that they did not know that the packages which Enrique gave them contained narcotics. They argue that the trial court committed reversible error by giving a version of the *"Jewell"* instruction which failed to tell the jury that if the defendants believed that what they were carrying was not contraband, they must be acquitted.[1]

---

1.  Guillermo argues that the trial court's failure to grant a motion for severance was prejudicial

and that the evidence was insufficient to support a conviction on the importation charge.

In *United States v. Jewell*, 9 Cir., 1976, 532 F.2d 697, (*in banc*), we affirmed a marijuana possession and importation conviction and held that the term "knowingly," as used in the criminal statute involved, was not limited to positive knowledge but included the state of mind of one who did not possess actual knowledge only because he consciously avoided it. In *Jewell*, the trial court gave the following instruction:

> The Government can complete their [*sic*] burden of proof by proving, beyond a reasonable doubt, that if the defendant was not actually aware that there was marijuana in the vehicle he was driving when he entered the United States his ignorance in that regard was solely and entirely a result of his having made a conscious purpose to disregard the nature of that which was in the vehicle, with a conscious purpose to avoid learning the truth.

> 532 F.2d at 700.

The instruction given in this case is basically the same as that given in *Jewell*.[2]

In *Jewell*, we said that the model instruction which should have been given would have included two elements, that "[t]he jury should have been instructed more directly (1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist." 532 F.2d at 704, n.21.[3]

In this case the trial court failed, over defense counsels' objections, to include the second of those two elements in its instructions. That precise issue was not before us in *Jewell*.[4] The only court which has dealt directly with this problem is the Second Circuit. In *United States v. Bright*, 2 Cir., 1975, 517 F.2d 584, that court reversed a conviction because the trial court refused to add the requested instruction.

■ One distinction must be drawn between the case at bar and *Jewell*. Here, a timely objection to the instruction was made. In *Jewell*, there was no objection to the instruction. Thus, the standard of review in *Jewell* was whether the instruction as given amounted to "plain error." F.R. Crim.P. 52(b). Applying that standard, we held that the deficiency in the instruction was not so substantial as to justify reversal because the two elements, which a proper *Jewell* instruction should contain, were implied in the general instruction given. In the case at bar, as in *Bright, supra*, an objection on the relevant grounds was raised, and therefore the issue is whether the deviance from the suggested *Jewell* instruction was harmless error.[5] F.R.Crim.P.

Esquer also raised the severance issue and challenges the admissibility of various incriminating statements which he made while being questioned. Because of our disposition of the *Jewell* issue, we do not reach these claims.

2. The pertinent part of the instruction states: "With respect to the Government's burden of proving as to a defendant that his possession of cocaine was knowing or intentional, I instruct that the Government can complete its burden of proof as to that element of the offense by proving beyond a reasonable doubt that if the defendant was not actually aware he had cocaine, his ignorance in that regard was solely and entirely a result of his having made a conscious purpose to disregard the nature of that which he had with a conscious purpose to avoid the truth."

3. In *United States v. Valle-Valdez*, 9 Cir., 1977, —— F.2d ——, we held that it was reversible error in that case to fail to include in the instruction element (1) quoted in the text from footnote 21 in the *Jewell* case. That question is not before us in this case because the objection to the instruction was not based upon that ground.

4. In *Jewell*, we said:
"*United States v. Bright*, 517 F.2d 584, 586–88 (2d Cir. 1975), reversed a conviction because the trial court refused to add to a 'deliberate ignorance' instruction the qualification 'unless he actually believes it did not exist,' found in Model Penal Code § 2.02(7). This question was not raised below, or in this court, perhaps because the evidence to support it was lacking." 532 F.2d at 702, n.12.

5. The impact of the distinction between the plain error standard and the harmless error rule in cases such as this is demonstrated by the Second Circuit's *per curiam* decision after a petition for rehearing in *United States v. Dozier*, 2 Cir., 1975, 522 F.2d 224, 228, also a case in which the second part of the "deliberate ignorance" instruction was not given. That court stated:
"The petition for rehearing based on this court's decision in *United States v. Bright*,

52(a). Here, we cannot conclude that the error was harmless.

We have no assurance that the jury succeeded in considering what the instruction did not tell them expressly to consider. As Judge Gurfein observed in *Bright*:

> The juror's difficult task of probing the mind and will of another person is hard enough with the aid of a charge that balances the countervailing considerations. His verdict becomes suspect when he has not had the benefit of a balanced instruction from the court.
>
> 517 F.2d at 587.

In this case, the jury was not given the required balancing instruction. It was given only the part favoring the government. That instruction focused upon the defendants' conscious purpose to disregard the truth and failed to add that the required knowledge was *not* established if Esquer or Guillermo actually believed that he was not holding any illegal drugs.

This was Esquer and Guillermo's main defense. They claimed that they thought that the packages were presents for Enrique's girlfriend. Guillermo testified that he asked his brother what the package contained, but Enrique refused to explain and merely repeated his request that Guillermo hold it for him. While the circumstances surrounding the transfer of the packages make the defendants' explanations highly suspect, the jury might have believed them and concluded that each of them honestly believed that the package that he handled did not contain drugs. Yet the jury was not given a direct instruction to acquit if that were what it found. Thus, we find that the failure to include the limiting instruction was prejudicial, and we reverse the convictions of Esquer and Guillermo and remand for a new trial.

In No. 76–2745, affirmed.

In Nos. 76–2734 and 76–2799, reversed and remanded.

CHOY, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion as far as it covers Enrique Platt-Lopez.

However, I believe it was entirely unnecessary and harmless error that the district court gave the *Jewell*-type jury instruction in view of the admissions made by the three appellants when they were first questioned shortly after their arrest at the border. The border agents told each of them his *Miranda* rights before questioning him. (They are educated and well-placed men in Mexico: Rene is an attorney in public administration; Enrique is an attorney; and Guillermo studied business administration three years at the university of Sonora and is the administrator of a ranch.)

Rene said Enrique gave him a package of the merchandise (cocaine) at Nogales, Sonora; the merchandise came from Culiacan; he (Rene) was going to get something from the deal, but did not know how much.

Enrique admitted he divided the cocaine in Hermosillo among himself, his brother (Guillermo) and Rene; Enrique and Guillermo walked across the border with the cocaine in their clothing; Rene drove through the port of entry carrying a quantity of the cocaine.

Guillermo said the cocaine was from Sinaloa (the state in which Culiacan is located); Enrique paid 100,000 pesos for the cocaine—10,000 for one ounce; he and his brother carried the cocaine across the border in their pants; he loaned Enrique some money to use in buying the cocaine; he was going to get a profit from the transaction.

With this kind of evidence before the jury of knowledge that the merchandise which they carried across was cocaine, the giving of the *Jewell*-type instruction was needless. In any event, having read the entire trial transcript, I am convinced that the erroneous instruction was harmless beyond a reasonable doubt as to Rene and

. . . is denied. While the trial counsel in *Bright* made 'acute' objections to the claimed lack of balance and fairness in the portion of the charge on the subject of conscious avoid-

ance of knowledge, counsel in the present case made no objection to the jury charge and certainly there was nothing plainly erroneous in the judge's instructions.''

Guillermo. I would affirm their conviction as well.