UNITED STATES of America, Appellee,

v.

Bernard KERSHMAN, Appellant.

No. 76–2075.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1977.

Decided May 18, 1977.

Rehearing and Rehearing En Banc
Denied Jume 10, 1977.

Theodore F. Schwartz, Clayton, Mo., for appellant.

Richard E. Coughlin, Asst. U. S. Atty., St. Louis, Mo. (argued), and Barry A. Short, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before HEANEY, ROSS and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

This direct criminal appeal is taken from a jury's verdict of guilty on three counts of a 19-count indictment.[1] The three counts charged appellant Kershman with the knowing and intentional distribution of dilaudid (a Schedule II narcotic drug controlled substance), in violation of 21 U.S.C. § 841(a)(1) (two counts), and conspiracy, in violation of 21 U.S.C. § 846. The district court[2] imposed sentence pursuant to 18 U.S.C. § 4205(c). Appellant alleges that errors in the instructions to the jury, in the admission of certain government exhibits, in the refusal to grant defendant's motion for mistrial, and in the refusal to voir dire the jury panel on certain questions proposed by the defendant, compel reversal of this conviction. In addition, appellant Kershman contends that the evidence was insufficient to sustain the verdict. We affirm.

Appellant Kershman has been a pharmacist for 39 years and has owned the Del Crest Plaza Pharmacy for the last 10 years. He came under suspicion as a result of an investigation by the St. Louis County Police Department of co-defendants Peggy Linze, Lawrence Alfred Smith and Patricia House.

The government's evidence showed that in May of 1976, the St. Louis County Police Department started surveilling the residence of Peggy Linze. In July officer Ted Zinselmeier arranged a purchase of dilaudid from Patricia House. After gaining House's confidence, he asked her about her supplier. House replied she was getting the dilaudid from Peggy Linze. When asked by Zinselmeier as to Linze's supplier, House replied that Linze had a connection who was a pharmacist. After several purchases from House, Officer Zinselmeier began purchasing dilaudid from Peggy Linze.

---

1. The indictment was filed against appellant and three other persons, Peggy Linze, Lawrence Alfred Smith and Patricia House. Appellant was granted a severance.

2. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

Prior to a purchase of dilaudid on July 26, 1976, Linze advised Zinselmeier that she was out of dilaudid and was leaving to meet her "man." She was followed to a location where she met Lawrence Alfred Smith and from there the two proceeded to an office building where Kershman's pharmacy was located. Upon Linze's return from the office building, she was able to complete the sale of dilaudid to Zinselmeier. Another similar transaction took place during August of 1976.

On September 8, 1976, Zinselmeier arranged for a purchase of 425 tablets of dilaudid for $4,000 from Linze. Linze stated she would have to meet her "man" the next day to acquire a sufficient supply of dilaudid to complete the deal. Linze was followed, along with Lawrence Alfred Smith, to Kershman's pharmacy on September 9, 1976. Linze and Smith were arrested as they left the Del Crest Plaza Pharmacy with three bottles of dilaudid in their possession. Appellant Kershman was immediately approached by the police at which time he produced three prescriptions for the dilaudid he had just dispensed. A search warrant was then served and numerous order forms and prescriptions were seized from Kershman's pharmacy.

The first issue we address on this appeal is the appellant's contention of error in the instructions to the jury. More specifically, appellant Kershman contends that the following instructions assumed facts not in evidence and changed the reasonable doubt standard to a reasonably prudent man standard:

In this connection, you are further instructed that if you find that the prescriptions for Dilaudid which defendant filled and which are involved in Counts 12 and 16 were not issued for a legitimate medical purpose by a physician during the usual course of his professional practice and that under the facts and circumstances known to him defendant had every reason to believe that such purported prescriptions had not been issued for a legitimate medical purpose, and that defendant deliberately and consciously closed his eyes to what he had every reason to believe was the fact, such studied avoidance of positive knowledge is a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in this case, that defendant knew that such purported prescriptions had not been issued for a legitimate medical purpose, and hence were knowingly filled by him.

■ Several circuits have approved the use of an instruction wherein the jury is instructed that the element of knowledge may be shown by deliberate ignorance. *United States v. Jewell*, 532 F.2d 697 (9th Cir.), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Dozier*, 522 F.2d 224, 226–27 (2d Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975); *United States v. Thomas*, 484 F.2d 909, 912–14 (6th Cir.), *cert. denied*, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973); *United States v. Grizaffi*, 471 F.2d 69, 75 (7th Cir. 1972), *cert. denied*, 411 U.S. 964, 93 S.Ct. 2141, 36 L.Ed.2d 684 (1973). The appellant does not take exception to this line of authority. He argues, however, that the above instructions implied to the jury that there was in fact "studied avoidance" on the part of the defendant. We note that the instruction specifically states "if you find that" and later refers to those findings as "such studied avoidance of positive knowledge." Therefore, we reject appellant's argument that the instructions assumed facts not in evidence.

Similarly, we reject appellant's argument that the instruction changed the standard of guilt from reasonable doubt to a reasonably prudent man standard. In essence, the appellant contends that the instructions failed to emphasize that subjective belief is the determinative factor. Therefore, the jury was allowed to convict on an objective theory of knowledge—that a reasonable man would have believed that the prescriptions had not been issued for a legitimate medical purpose.

201

It is axiomatic that the jury instructions should be construed as a whole. *See United States v. Thompson-Hayward Chemical Co.*, 446 F.2d 583, 585 (8th Cir. 1971). The challenged instructions given here by the district court required the jury to find that the defendant deliberately and consciously closed his eyes. Moreover, the jury was instructed that if the pharmacist believed in good faith that a prescription was issued and prescribed for a legitimate medical purpose by a physician acting in the usual accord of his profession, then the pharmacist is excepted from criminal responsibility.

In addition the court generally instructed as follows:

The matter of intent is, of course, an essential element which must exist in order for an accused to be criminally liable. Therefore, in order to find the defendant guilty, you must not only believe that he did the acts complained of, and of which he here stands charged, but you must also believe that the acts were intentionally, willfully and knowingly done by the defendant.

An act is done "willfully" if done voluntarily and intentionally, and with specific intent to do something the law forbids.

The term "knowingly" as used in these instructions means that the act was done voluntarily and purposely and not because of a mistake or accident or some other innocent reason. Knowledge may be proved by the defendant's conduct and by all the acts and circumstances surrounding the case.

In light of all these instructions, we conclude that the jury was not permitted to convict on an "objective" rather than "subjective" theory of the knowledge requirement as urged by appellant. Accordingly, the trial court did not err in its instructions to the jury.

Appellant next contends that the district court erred in admitting into evidence prescriptions which were seized from the Del Crest Plaza Pharmacy pursuant to a search warrant. More particularly appellant argues that the affidavit for the search warrant lacked probable cause. We disagree.

This court has stated on several occasions that "The affidavit need only establish the *probability* of criminal activity and secreting of evidence on specific premises, not proof beyond a reasonable doubt." *United States v. Jones*, 545 F.2d 1112, 1114 (8th Cir. 1976), *quoting from United States v. Smith*, 462 F.2d 456, 460 (8th Cir. 1972).

Turning to the record before us, the affidavit set forth the undercover investigation of Peggy Linze and her associates concerning the dilaudid sale. One associate had stated that Linze's supplier was a pharmacist. On at least one occasion Linze and Lawrence Alfred Smith had been followed by a surveillance team to Kershman's pharmacy. After the visit to the pharmacy, Linze was able to sell a large quantity of dilaudid. The affidavit recites that during one of these pharmacy visits Detective Stern, who was inside the pharmacy, observed appellant Kershman hand a brown paper bag to Smith, who immediately handed it to Linze and stated: "This is hers." The affidavit further stated that the Del Crest Plaza Pharmacy had received a large amount (1600 tablets) of dilaudid from June 17 to July 13, 1976. Dilaudid is a very rarely prescribed drug used almost exclusively for terminal cancer patients. Our review of the lengthy affidavit convinces us that it set forth sufficient reliable underlying facts for the issuing court to find that there was probable cause to believe that records of purchases and sales of Schedule II narcotic drug prescriptions were present at the Del Crest Plaza Pharmacy which should be seized.[3]

3. The government argues alternatively that the officers involved in the seizure had a right pursuant to 21 U.S.C. § 827 to examine the records which were seized. If the officers have a right to examine the records, the government argues they likewise have a right to seize them as evidence of the crime. Although we need not decide this issue in light of the fact that the affidavit was sufficient, we note that in a similar situation the First Circuit has upheld such a seizure. *United States v. Wilbur*, 545 F.2d 764

■ Appellant's next contention is that the district court erred in refusing to grant appellant's motion for mistrial. The government called Candice Wilson as a rebuttal witness. Ms. Wilson had worked for Kershman for four days. When asked by the government her reason for leaving her position at Kershman's pharmacy, she replied in part that she "didn't want to become involved in anything." The defense immediately asked for a mistrial on the grounds that her answer was prejudicial and improper rebuttal. The district court directed the government to clarify the matter and overruled the defendant's motion. Thereafter the government asked the witness if she was present on the day that the two individuals were arrested outside the pharmacy, to which she responded in the affirmative. In light of this explanation, we are satisfied that appellant has failed to show an abuse of the trial court's discretion in failing to grant a mistrial. *See United States v. Vitale*, 549 F.2d 71, 72–73 (8th Cir. 1977).

■ The appellant next contends that the district court erred in refusing to voir dire the jury panel on the questions proposed by appellant. As this court has previously stated:

> [W]e are required to recognize that the form and scope of a voir dire examination are matters that are left largely to the discretion of the trial judge and that it is only rarely that a supposed deficiency in a voir dire examination will call for correction by an appellate court.

*United States v. Cosby*, 529 F.2d 143, 147–48 (8th Cir. 1976). Here appellant's proposed questions dealt with specific areas of the law of conspiracy. The district court commented to counsel that it was not going to ask these questions since it would be later instructing the jury on that area of the law. The defense did not object. Our

review of the district court's careful voir dire interrogation of the jurors convinces us that the procedural rights of the appellant were adequately protected. Accordingly, we find that appellant's contention that the voir dire examination was deficient is without merit.

■ The appellant finally contends that the evidence was insufficient to sustain the verdict.[4] We have carefully and thoroughly reviewed the record and an exhaustive recitation of it would not be helpful. Taking the substantial evidence we find in the record in the view most favorable to the government and accepting as established all reasonable inferences from the evidence that tend to support the action of the jury, *United States v. Frazier*, 545 F.2d 71, 74 (8th Cir. 1976), we conclude that there was sufficient evidence to sustain the verdicts.

Affirmed.

---

(1st Cir. 1976). *See United States v. Rabicoff*, 55 F.Supp. 88 (W.D.Mo.1944).

4. Although appellant argues that the district court erred in allowing Officer Becker to testify to an out-of-court declaration made by co-defendant Smith, it is clear from the record that

Smith's statement that he could not write smaller (made during the time he was giving a handwriting sample) was not offered to prove the truth of the matter asserted. Therefore, we find appellant's argument without merit.