UNITED STATES of America,
Appellee,

v.

Maria Rosalba GUEVARA, also known as Sealed Deft. # 1, also known as Maria Giboyeaux, also known as Maria R. Rojo–Alvarez, also known as Rosalba Rojo–Alvarez, also known as Awilda Caravallo; Luz Marina Cardenas–Callejas, also known as Sealed Deft. # 2; Monica Callejas–Cardenas, also known as Sealed Dft. # 3; Magaly Maria Duran–Jacome, also known as Sealed Dft. # 4; Arles De La Pava Salgado, also known as Sealed Dft. # 5; Luis Fernando Sanchez–Arce, also known as Sealed Dft. # 6, also known as Cristobal Ramirez; Ruben Dario Gutierrez–Gutierrez, also known as Sealed Dft. # 7; Rosa Eugenia Henao–Perez, also known as Sealed Dft. # 8; Javier Antonio Diaz–Mejia, also known as Sealed Dft. # 9, also known as "The Jeweler"; Diego F. Obonaga–Quiceno, also known as Sealed Dft. # 10; Oscar D. Gomez–Gil, also known as Sealed Deft. # 11; Juan Carlos Lopez–Ortega, also known as Sealed Dft. # 12; Maria Del Pilar Casas–Garzon, also known as Sealed Dft. # 14; Faustino Castillo–Medina, also known as Sealed Dft. # 15; Bleidy Rua–Cardona, also known as Sealed

Dft. # 16, also known as Bleidy Botero; Julio Eduardo Linares, also known as Sealed Dft. # 18, Defendants,

Tranquilina Leguizamon–Diaz, also known as Sealed Dft. # 17,
Defendant–Appellant.

No. 02–1104.

United States Court of Appeals,
Second Circuit.

April 1, 2004.

Barbara D. Cottrell, Senior Litigation Counsel, for Glenn T. Suddaby, United

States Attorney for the Northern District of New York (Richard S. Hartunian, Assistant United States Attorney, on the brief), for Appellee.

Eileen F. Shapiro, Brooklyn, NY, for Defendant–Appellant.

Present: CALABRESI, KATZMANN, Circuit Judges, and POLLACK, District Judge.*

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED.**

Defendant Tranquilinia Leguizamon–Diaz ("Defendant"), a Paraguayan national, was convicted after a jury trial of bribery of a public official and conspiracy to bribe a public official, in violation of 18 U.S.C. §§ 201(b)(1)(A), 2, 371. The district court (McAvoy, *J.*) sentenced Defendant to ten months' imprisonment, three years of supervised release, and a special assessment of $200. Having completed her prison sentence, she is currently in the custody of the immigration authorities awaiting deportation. In this appeal, she argues, first, that there was insufficient evidence to support the conviction, and, second, that the "conscious avoidance" instructions that were administered to the jury were unwarranted on the facts of the case and defective in content. We reject these challenges and affirm the conviction.

This prosecution arose out of a sting operation in which state and federal agents posed as drug dealers who, for a fee, would obtain permanent resident alien status for aliens by bribing a putative corrupt INS official. The agents would utilize "brokers"—in this case, Maria Rosalba Guevara—whose job it was to find interested aliens and bring them to the drug dealers.[1] On February 9, 2000, Guevara brought Defendant and three other aliens to a restaurant in upstate New York. After Guevara collected money from Defendant (which money Guevara later transferred to the agents outside the presence of the aliens), Defendant met with the head drug dealer, played by New York State Police Department Senior Investigator Samuel Mercado, who explained the process she was about to go through. Among other things, he explained that she would be obtaining her permanent resident status by way of marriage and that she should remember not to say that she obtained it in some other way, such as through her family or her employer; that she would be receiving a stamp[2] on her passport, which is the functional equivalent of a green card; and that she should wait seven to ten days before using the stamp to obtain a Social Security Card, in order to give "Maestro" (the name the agents gave to the putative INS official) time to put her information into the "computer."

Defendant was then taken to a room at a nearby hotel to meet with another undercover agent, New York State Police Department Investigator Nelson Torres, who testified that he was playing the role of the corrupt INS official or a "helper" to such an official. A hidden video camera recorded what took place in the room. (Portions of this videotape were shown to the jury, and the jury received a transcript, which was translated from Spanish into English.)

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Brokers were targets of the sting, not informants; consequently, they were later prosecuted.

2. This stamp–known as an "adit stamp"–reads "processed for I–551 temporary." (An "I–551" is a green card.) Like a green card, the stamp is evidence of permanent resident alien status and can be used to obtain a Social Security Card and other documents.

Torres asked Defendant a series of questions and noted her answers on three INS forms. At one point during this process, Torres turned to one of the drug dealers in the room, who was played by New York State Police Department Investigator Fernando Ortega, and said, "Speaking of money ... did you receive ... ?" Ortega responded, "Yes, I believe that with the lady you....?" The videotape shows that Defendant then made a gesture with her hands, which Torres, according to his testimony, interpreted to mean "that's settled" or "[t]hat's taken care of." At the end of this session, Torres placed a dated stamp on Defendant's passport.

Defendant argues that there was insufficient evidence that she bribed a public official or conspired with Guevara to do the same. Specifically, she argues that there was insufficient proof that she knew of the workings of the putative criminal scheme—that is, that she knew that an INS official was involved and that some of the money that she gave to Guevara would be used to bribe this official.

"When challenged on sufficiency grounds, a conviction will be affirmed if, viewing all the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Samaria,* 239 F.3d 228, 233 (2d Cir.2001) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The record is replete with facts on the basis of which a jury could conclude that Defendant knew that what was going on was illegal. The evidence that she knew that a public official was involved and would be bribed, however, is considerably weaker. Much of the agents' testimony described their conception of the putative illegal scheme. To

that extent, it did not provide facts from which a jury could infer what the particular defendant in this case knew was going on. And, to find Defendant guilty of bribery and conspiracy, a jury would need evidence that she knew that the money she gave Guevara would be used to bribe a public official.

We have reviewed the record with great care, however, and we find that a jury could conclude a) that Defendant believed that the man (agent Torres) who was filing out the immigration forms and who administered a stamp to her passport was an INS official, and b) that, since this man made reference to being sure that the money had been paid, Defendant knew that he would receive some of it. A rational jury need not reach this conclusion, but it properly might. It also could reach the conclusion that Defendant was aware of a high probability that these facts might be true and went out of her way to avoid confirming them.[3] With these elements of knowledge established, a jury could readily infer from Defendant's conduct that she held the requisite specific intent to be convicted of bribery and conspiracy.

Defendant also objects to the contents of the conscious avoidance instructions, which were given at three different points during the jury charge. We conclude that Defendant's specific objections lack merit. The instructions, when considered in their entirety, properly conveyed that the jury had to find that Defendant was aware of a high probability of the particular fact in dispute, and that a finding of negligence, mistake, or foolishness on the part of Defendant would be insufficient. *See United States v. Rodriguez,* 983 F.2d 455, 457 (2d Cir.1993). And while the second rendition of the conscious avoidance instruction seems to in-

---

**3.** Accordingly, we find that there was a sufficient factual predicate to warrant the giving of the conscious avoidance instructions. *See*

*United States v. Ferrarini,* 219 F.3d 145, 154 (2d Cir.2000).

terchange knowledge and intent, the instruction is not technically incorrect as stated, and any confusion would have been cleared up by the other renditions of the instruction.

The conscious avoidance instructions, however, are problematic in one respect. Our caselaw states that an instruction that knowledge of the existence of a particular fact may be inferred if the defendant is aware of a high probability of its existence must be balanced by the proviso that the jury cannot infer knowledge if the defendant "actually believed the contrary." *United States v. Sicignano,* 78 F.3d 69, 71 (2d Cir.1996) (per curiam); *see also Rodriguez,* 983 F.2d at 457. In other words, in this circuit, there is no conscious avoidance if the defendant had an "actual belief of the non-existence of the fact." *United States v. Bright,* 517 F.2d 584, 587 (2d Cir.1975).[4] The district court, however, instructed the jury that "[i]f you find that the defendant actually believed that what she was doing was lawful, she may not be convicted," "if you find that the defendant actually believed that the processing of the green cards was legitimate, she may not be convicted," and, finally, "if you find that the defendant actually believed that she was involved in a legitimate and legal process, she may not be convicted." These instructions lowered the threshold for what the government needed to show. Under them, the existence of a belief that there was *no criminality of any kind* was needed to obviate conviction based on conscious avoidance. Instead, under our cases, a belief on Defendant's part that, though criminality was involved, the criminality did not include bribery of a public official, would suffice to require an acquittal on the counts charged. Given the closeness of the evidence in this case, we cannot say that this error was harmless. Defendant's trial counsel, however, did not object to this aspect of the instructions,[5] nor did her appellate counsel raise this issue to us. Under the circumstances, we are unable to correct this charging error in the appeal before us.

We have considered all of Defendant's claims and find them to be without merit. We therefore AFFIRM the judgment of conviction.

---

**4.** *Sicignano* and *Bright* vacated convictions where the jury instructions lacked this proviso.

**5.** Indeed, he may well have contributed to the problematic language. *See* Trial transcript at 290.