577 F.2d 769
 UNITED STATES of America, Appellee,
v.
Celedonia MORALES, Appellant.
 No. 298, Docket 77-1272.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 17, 1977.
Decided April 12, 1978.
 
 Barry Bassis, Legal Aid Society, New York City (Martin Erdmann, Federal Defender Services Unit, New York City, of counsel), for appellant.
 Alvin A. Schall, Asst. U. S. Atty., Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.
 Before WATERMAN, ANDERSON and MANSFIELD, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 Celedonia Morales appeals from her conviction, after a jury trial in the Eastern District of New York before Judge Thomas C. Platt, of one count of possession of heroin with intent to distribute, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. She was sentenced, pursuant to 18 U.S.C. § 4205(b)(2), to a term of 12 years imprisonment and a special parole term of 10 years. Appellant does not contend that the evidence adduced at trial was insufficient to convict. Rather, she claims that she was prejudiced by certain errors committed by Judge Platt in his instructions to the jury and by her trial counsel. Because we believe that a series of circumstances had the cumulative effect of denying appellant a fair trial on the issue of whether she knew that a suitcase she was carrying for someone else contained narcotics, we reverse and remand for a new trial.
 
 
 2
 On February 25, 1977, appellant, using the assumed name of Carmen Ortiz, purchased a one-way plane ticket from O'Hare Airport, Chicago, to LaGuardia Airport, New York. By chance, the tag for her suitcase was lost before the luggage was placed on the airplane and, in the course of searching for information as to its destination, an airlines baggage agent opened it and found inside two small packages, both of which were wrapped completely in silver electrician's tape and buried beneath some dirty clothes. One of the packages had acquired a small tear about a quarter of an inch long in it by the time it was discovered and was giving off a vinegar-like odor. As a result, the baggage agent became suspicious and reported the matter to the authorities. A field test of the contents of the packages performed by an agent of the Drug Enforcement Administration (DEA) revealed that they contained heroin.
 
 
 3
 After removing small samples of the narcotics, the DEA agent determined the airline's flight number and the destination of the suitcase, alerted the DEA office in New York of its expected arrival, and had the luggage forwarded to LaGuardia Airport. Meanwhile, appellant arrived in New York and again used the assumed name of Carmen Ortiz on a lost baggage report informing the airline that her suitcase was missing. Shortly thereafter the bag arrived, and she picked it up. After appellant made several phone calls, she was arrested by DEA agents who had been keeping her under surveillance.
 
 
 4
 As appellant spoke English somewhat haltingly, an officer of the Customs Service advised her in Spanish of her constitutional rights. Although she admitted that she had opened the suitcase to put in a blouse, appellant denied knowing that it contained drugs. She explained that a man named "Juan," whom she had seen occasionally in her neighborhood, had promised her $1,000 if she would deliver a suitcase to a man named "Shorty" in New York; she indicated that she had simply followed instructions.
 
 
 5
 Immediately after her arrest, appellant agreed to cooperate with the federal agents and, as arranged, delivered the suitcase to one Anna Mendez in Brooklyn, New York, who, it was understood, was to turn the narcotics over to "Shorty," the buyer. Although "Shorty" and Mendez were both arrested for their participation in the transaction, appellant was either unwilling or unable to furnish the DEA agents with the name and address of her heroin source.
 
 
 6
 Appellant and Mendez were jointly indicted for possession of heroin with intent to distribute it, but their cases were severed before trial. Appellant was tried on April 6 and 7, 1977. As much of the intended trial testimony had either been the subject of a lengthy suppression hearing on April 5 or concerned facts not in dispute, the attorneys entered into stipulations which obviated the need for producing several Government witnesses. The Government, therefore, called only Special DEA Agent Gerard Whitmore, who was in charge of the investigation, and Philip Lawry, the officer of the United States Customs Service, who had been called in because of his fluency in Spanish to assist in advising appellant of her rights and in questioning her at the airport. Appellant did not testify or call any witnesses on her behalf.
 
 
 7
 The only disputed issue at trial was whether appellant had known that her suitcase contained drugs despite her insistence to the contrary in questioning following her arrest. The Government introduced no direct evidence, such as admissions or testimony by others involved in the transportation of the suitcase, to the effect that appellant's denials were false and that she actually was aware of the nature of the contents of the taped packages in her suitcase. Rather, it relied exclusively on circumstantial evidence. The prosecution asked the jury to infer the existence of the knowledge required for a conviction under 21 U.S.C. § 841(a)(1)[1] from her statements that she had opened the suitcase to put in a blouse and that she had been offered $1,000 to transport the suitcase to New York, and from her use of an assumed name while she was performing this errand. We cannot share the Government's characterization of this evidence as "overwhelming"; on the contrary, although it could create a suspicion of guilt it was also consistent with ignorance of the general nature of what she transported. The contents of the taped packages were not obvious and could not have been determined by appellant unless she had been advised by someone or had made her own investigation, neither of which was shown. While it is reasonable, as the Government points out, to infer that appellant could hardly have believed that she would be paid $1,000 for transporting a suitcase full of dirty clothes to New York, this does not require an inference that she believed the contents to be narcotics, as distinguished from some other contraband such as stolen jewelry or precious metal, counterfeit bills, uranium, valuable documents, or the like. Thus her use of an alias was as consistent with the defense theory that she was a "mule," ignorant of the nature of the contraband she carried, as with the prosecution's contention that she was fully aware of the contents of the two opaque packages in the suitcase.
 
 
 8
 Absent direct evidence, the fairness of appellant's trial depended heavily on the jury's being accurately informed of the relevance of circumstantial proof bearing on her state of mind. Not only was all of the evidence consistent with her having been an innocent carrier, a not unusual state of affairs in this kind of case, but also some of the Government's own evidence the testimony reciting appellant's denials and her swift decision to cooperate tended to support her claim of ignorance. Under these circumstances, an error in instructions regarding the relevance of the proof was far more significant than it might otherwise have been. Unfortunately the record reveals several errors with respect to the issue of appellant's guilty knowledge. Taken in combination, they were serious enough to deprive appellant of a fair trial.
 
 
 9
 First, the trial judge charged the jury regarding appellant's use of an assumed name on her lost baggage report as follows:
 
 
 10
 "There is evidence in this case, or at least the Government claims that there is evidence in this case, that the defendant participated in the fabrication of a document intended to mislead the investigative authorities. If you find beyond a reasonable doubt that this document was spurious or false, and if you find beyond a reasonable doubt that the defendant participated in the making of it, you may consider that fact as probative of the defendant's guilt.
 
 
 11
 "The fabrication of false documentary evidence has from the earliest time been treated as evidence of guilt. Similarly, if you find beyond a reasonable doubt that the defendant used a name other than her own in order to avoid subsequent identification, that would be a fact from which you may, but need not, if you do not wish to do so, infer a consciousness of guilt on her part." (Tr. 300-01).
 
 
 12
 Of course appellant's use of a false name on her lost baggage report was admissible to show consciousness of guilt, i. e., that she knew she was doing something wrong or illegal. Consciousness of wrongdoing, in turn, might be considered along with all other relevant evidence bearing on the issue of whether she knew she was carrying narcotics. See 2 Wigmore on Evidence § 276, at 111 (3d ed. 1940). However, neither the use of an alias nor a general consciousness of guilt was an element of the crime charged; the Government had to show that appellant knew she possessed drugs, not that she was aware that she might be involved in some sort of criminal activity. Consequently, this case is closely analogous to United States v. DiStefano, 555 F.2d 1094, 1104 (2d Cir. 1977), in which we held that it was plain error to instruct a jury that a false exculpatory statement made by a defendant after her arrest was "circumstantial evidence of guilt." Despite the limited inferences that might permissibly be drawn from appellant's use of a false name on her baggage report, the district court's instruction indicated that this conduct was unequivocally probative of guilt. Thus, it prejudiced appellant by misstating the relevance of an act whose ambiguity should have been resolved by the jury.[2] Moreover, the erroneous instruction immediately followed the prosecutor's argument in summation that appellant's use of an alias on the lost baggage report form was "evidence of guilt," thus lending the court's imprimatur to the prosecutor's error.[3]
 
 
 13
 In view of the remainder of the record in this case, we need not decide whether the erroneous instruction regarding appellant's falsification of her lost baggage report which drew no objection from defense counsel would in and of itself constitute "plain error," see Rule 52(b), F.R.Cr.P., entitling appellant to reversal. We hold only that, when taken with the other errors discussed below, it was under the circumstances of this case serious enough to require a new trial.
 
 
 14
 A second error was the trial judge's failure to balance his instruction on the subject of "conscious avoidance of knowledge." He stated:
 
 
 15
 "The fact of knowledge may be sustained by direct or circumstantial evidence, just as any other fact in the case. One may not willfully and intentionally remain ignorant of a fact important and material to her conduct, and thereby, escape punishment. The defendant's lack of knowledge is not available to the defendant, if the jury finds from all of the evidence beyond a reasonable doubt that the defendant had a conscious purpose to avoid enlightenment by closing her eyes to the facts which should have caused her to investigate." (Tr. 301).
 
 
 16
 In United States v. Bright, 517 F.2d 584 (2d Cir. 1975), where the issue was whether the defendant had known that certain checks were stolen, and the trial judge had instructed the jury, using language similar to that used here, that it could infer guilty knowledge from the defendant's conscious avoidance of knowledge, we reversed the conviction because the trial court had failed to balance the instruction with the caveat that the jury should acquit if it found that the defendant had believed the checks not to have been stolen. The defendant's testimony that she believed the checks were not stolen because of the way in which she had obtained them made this caveat particularly appropriate. See also United States v. Esquer-Gamez, 550 F.2d 1231 (9th Cir. 1977).
 
 
 17
 As we indicated in Bright, see 517 F.2d at 587-88, although the balancing language suggested there is not the sine qua non of a proper instruction, the trial judge has a general duty to balance his instructions regarding the significance of conscious avoidance of knowledge where necessary to assure fundamental fairness in the jury's appraisal of the evidence. The necessity for and nature of the balancing language will of necessity depend on the evidence in each case.[4]
 
 
 18
 In this case, neither side introduced any direct evidence regarding appellant's belief as to the contents of the packages in her suitcase. Accordingly, the court was not required to charge the jury that it could acquit her if it found that she believed that the case contained something other than narcotics. See, e. g., United States v. Lozaw, 427 F.2d 911, 916 (2d Cir. 1970); United States v. Turley, 135 F.2d 867, 869-70 (2d Cir.), cert. denied sub nom. Burns v. United States, 320 U.S. 745, 64 S.Ct. 47, 88 L.Ed. 442 (1943); United States v. Waskow, 519 F.2d 1345, 1347 (8th Cir. 1975). However, the jury did have before it evidence that appellant spoke little or no English and that, upon being arrested, she advised the agents that she had not known there were drugs in the suitcase, following which she furnished some cooperation to the Government. Under these circumstances the trial judge should at least have balanced its instruction by advising the jury that unless it found that appellant had been "aware of a high probability" that her suitcase contained drugs, it should acquit. See United States v. Valle-Valdez, 554 F.2d 911 (9th Cir. 1977).
 
 
 19
 In Valle-Valdez the circumstances were substantially the same as those here. The defendant was arrested while driving a car whose trunk contained 302 kilo bricks of marijuana and charged with a violation of § 841(a)(1). His only defense was that he had been completely ignorant of the trunk's contents; he explained that a man had offered him $100 to drive the car from Mexico to the United States and that he had accepted without suspecting that he was transporting drugs.[5] The trial court instructed the jury that the Government could meet its burden of proving knowledge by "proving beyond a reasonable doubt that the defendant acted with a conscious purpose to avoid learning the truth of the contents of the vehicle." The Ninth Circuit reversed because of the failure to add that the jury could convict only if it also found that the defendant was aware of a high probability that the car contained drugs.[6]
 
 
 20
 Judge Platt's charge in this case that "(t)he defendant's lack of knowledge is not available to the defendant if the jury finds . . . beyond a reasonable doubt that the defendant had a conscious purpose to avoid enlightenment . . ." suggested to the jury that it could disregard appellant's denial of knowledge if it found conscious avoidance, whether or not she was aware of a high probability that she possessed drugs. Accordingly, as in Valle-Valdez, the instruction could have had the effect, once the jury found conscious avoidance, of precluding it from inferring on the basis of her statements to the agents and her cooperation with the Government that she thought that she was carrying some other contraband or that it never occurred to her that she was transporting narcotics.[7]
 
 
 21
 Thus the trial judge's failure to balance his conscious avoidance charge not only was independent error but also compounded the prejudice resulting from his erroneous instruction regarding the inference that might be drawn from appellant's falsification of her lost baggage report.
 
 
 22
 The third circumstance undermining the fairness of appellant's trial was a serious error committed by defense counsel during his closing argument, which led to a prejudicial instruction by the court. On at least two occasions, appellant's trial attorney suggested that appellant might have thought that the taped packages in her suitcase contained marijuana, despite the complete absence of any evidentiary basis for such a statement.[8] Apparently he believed that the Government had to show that appellant knew specifically that she possessed heroin as opposed to knowing generally that she was carrying some narcotic. On the contrary, the law is settled that a defendant need not know the exact nature of a drug in his possession to violate § 841(a)(1); it is sufficient that he be aware that he possesses some controlled substance. United States v. Jewell, 532 F.2d 697, 698 (9th Cir.) (en banc), cert. denied, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); United States v. Davis, 501 F.2d 1344 (9th Cir. 1974). Nevertheless, because defense counsel was seemingly unaware of these cases, a significant part of his summation was devoted to speculation without any support in the record which unwittingly suggested that appellant had had sufficient knowledge to be convicted.
 
 
 23
 The significance of defense counsel's remarks did not escape the prosecutor's attention. After the court had completed its instructions, the Government requested that the court dispel any mistaken impression defense counsel may have left. Thereupon, Judge Platt charged the jury that the Government did not have to prove knowledge of a specific narcotic.[9] While this instruction was an accurate statement of the law, it had the unfortunate effect under the circumstances of informing the jury that defense counsel's argument did not constitute a valid defense, without pointing out that there had been no evidence introduced as a basis for his speculation. Indeed, the trial judge's response to the Government's request may well have drawn the jury's attention to appellant's attorney's reference to marijuana. After it had deliberated for some time, the jury addressed the following question to the court:
 
 
 24
 "(W)ould the defendant be equally guilty as (sic) possession of any other narcotic as heroin; would marijuana be included." (Tr. 323).
 
 
 25
 In response, the trial judge remarked, "The first two questions apparently arise out of my last instruction," and repeated the substance of that instruction, telling the jury that the Government did not have to prove that appellant knew that her suitcase contained heroin as distinguished from some other drug but without noting the absence of any evidence that she believed it contained some drug other than heroin.[10] During this supplemental charge, moreover, the judge also referred specifically to marijuana, further highlighting the fact that defense counsel's argument did not constitute a defense. Shortly thereafter, the jury returned a guilty verdict.
 
 
 26
 Even though defense counsel's comments taken alone or in conjunction with other supposed errors committed during his representation of appellant did not make appellant's trial a "farce and a mockery of justice," United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), the record demonstrates that the trial judge's instructions directed the jury's attention to defense counsel's remarks without correcting the false impression that they may have engendered. This incident alone might not require a reversal. However, it bore directly on the issue of appellant's knowledge, and it augmented the prejudicial effect of the court's two other erroneous instructions.
 
 
 27
 In conclusion, the jury charge misstated in two important respects the significance of the evidence bearing on the sole contested issue, appellant's knowledge, and defense counsel's remarks about marijuana during his closing argument, combined with the court's instruction on the subject, may well have confused the jury as to that evidence. Under the circumstances we believe that the cumulative effect of these errors was to deprive appellant of a fair trial on the issue of whether she knew that her suitcase contained drugs.
 
 
 28
 For the above reasons we reverse the conviction and remand the case to the district court for a new trial.[11]
 
 ROBERT P. ANDERSON, Circuit Judge, dissenting:
 
 29
 I dissent. This case was tried before a jury which returned a verdict of guilty against the accused, Morales. There was ample evidence to support that verdict. No point has been raised on appeal that there was an insufficiency of proof. The majority suggests that the evidence for conviction was not "overwhelming" because the Government offered no direct evidence, such as an admission by the accused or testimony by knowledgeable witnesses, that she had been told or was otherwise aware of what the suitcase contained. But a verdict of guilty is not rendered nugatory because of the absence of that kind of proof. The Government is entitled to every reasonable inference that may be drawn from the evidence.
 
 
 30
 The jury could have inferred that the accused refused to disclose the identity of the person who gave her the suitcase in Chicago because he knew and she knew that it was her job to transport the contraband. It could infer that she knew that she was being paid $1,000, not simply to carry a bag of dirty clothes from Chicago to New York, but for taking the risk of transporting illicit goods. There were, moreover, evidences of her conscious avoidance of knowledge and of her consciousness of guilt, e. g., her express assertion to the Government agents that she was entirely unconcerned with the contents of the suitcase, and her use of a false name and false documents as purposeful steps in the course of committing the offense charged.
 
 
 31
 The Government's evidence also showed that the accused opened the suitcase on at least one occasion to place a blouse in it and that the heroin in the pouches gave off a noticeable vinegar-like odor. There was also the testimony that the packages in the suitcase did contain heroin. These are circumstances from which the jury could have reasonably inferred, and did infer, that the appellant knew the suitcase contained narcotics. Cf. United States v. Olivares-Vega, 495 F.2d 827 (2d Cir.), cert. denied, 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 293 (1974); United States v. Joly, 493 F.2d 672 (2d Cir. 1974).
 
 
 32
 The majority, in testing the reasonableness of an inference drawn by the jury, considered only one relevant fact and concluded that that fact alone was insufficient to support the inference. It ignored, however, all other relevant facts in the case which the jury must have relied upon. For example, the majority said,
 
 
 33
 "Thus her use of an alias was as consistent with the defense theory that she was a 'mule,' ignorant of the nature of the contraband she carried, as with the prosecution's contention that she was fully aware of the contents of the two opaque packages in the suitcase." (Emphasis added.)
 
 
 34
 But in the context of the other relevant circumstances, above mentioned, the jury had complete justification and adequate grounds to draw the reasonable inference of guilt.
 
 
 35
 With respect to the legal issues raised on appeal, the majority correctly points out that, at trial, defense counsel made no objection to the district court's charge to the jury and that none of the allegedly erroneous instructions, in itself constituted plain error. See Rule 52(b), F.R.Cr.P.; United States v. Pelose, 538 F.2d 41 (2d Cir. 1976). Yet, the majority concludes that "the cumulative effect of these errors was to deprive appellant of a fair trial on the issue of whether she knew that her suitcase contained drugs." It has been the practice of this court to invoke the plain error rule sparingly, see United States v. Moore, 571 F.2d 76 (2d Cir. 1978); United States v. Indiviglio 352 F.2d 276 (2d Cir. 1965) (en banc ), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). This case does not present a situation where the charge as a whole had either the effect of removing an essential element of the offense from the jury's consideration, United States v. Singleton, 532 F.2d 199 (2d Cir. 1976); or was so defective and deficient that the guidance given the jury did not enable it to fulfill its function properly, United States v. Clark, 475 F.2d 240 (2d Cir. 1973).
 
 
 36
 The majority, however, accepts appellant's contention that the trial judge's charge was deficient in two respects: first, that he erroneously instructed the jury that, if it found that appellant had fabricated a false document, it could consider this as probative of her guilt instead of her "consciousness of guilt;" and, second, that he failed to balance his instruction on the inferences that could be drawn from her "conscious avoidance of knowledge" of the contents of the suitcase, with an instruction that, unless it found that she had been "aware of a high probability" that her suitcase contained drugs, it should acquit her.
 
 
 37
 It is important to note that appellant's fabrication of a false document and her use of a false name were not extrajudicial exculpatory statements, made after the perpetration of the offense charged, in the hope of extricating herself from suspicious circumstances. United States v. Johnson, 513 F.2d 819 (2d Cir. 1975). The facts of this case are, therefore, readily distinguishable from those of United States v. DiStefano, 555 F.2d 1094 (2d Cir. 1977), relied upon by appellant. In DiStefano, the court held that, in view of the otherwise weak evidence against the defendant, who was charged with conspiracy and aiding and abetting a bank robbery, it was plain error for the district court to charge the jury that defendant's false exculpatory statements were circumstantial evidence of her guilt. As in the case of United States v. Johnson, supra, the other evidence at trial merely established defendant's presence at the scene of a crime; and, therefore, the charge prejudiced the defendant by giving undue emphasis to the importance of the false exculpatory statements. United States v. DiStefano, supra, at 1104, n. 9; see also, United States v. Kearse, 444 F.2d 62 (2d Cir. 1971).
 
 
 38
 In the present case, however, unlike the defendant in either DiStefano or Johnson, the appellant purposefully fabricated a false document and used a false name in the actual course of committing the crime itself in order to confuse any law enforcement agents who might be investigating drug traffic and to avoid subsequent identification. While these acts are evidence that the appellant was conscious of her guilty purpose, they also have independent probative force, United States v. Johnson, supra; United States v. Parness, 503 F.2d 430 (2d Cir. 1974), cert. denied, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975); from which, with the other evidence in the case, the jury could properly infer appellant's guilt. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); Alberty v. United States, 162 U.S. 499, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); United States v. Montalvo, 271 F.2d 922 (2d Cir. 1959), cert. denied, 361 U.S. 961, 80 S.Ct. 589, 4 L.Ed.2d 543 (1960); cf. United States v. Lacey, 459 F.2d 86 (2d Cir. 1972); United States v. McConney, 329 F.2d 467 (2d Cir. 1964). But they are not conclusive and cannot, alone, furnish a foundation for a verdict of guilty.
 
 
 39
 As the Supreme Court stated in Hickory v. United States, 160 U.S. 408, 416-417, 16 S.Ct. 327, 330, 40 L.Ed. 474 (1896):
 
 
 40
 "It is undoubted that acts of concealment by an accused are competent to go to the jury as tending to establish guilt, yet they are not to be considered as alone conclusive, or as creating a legal presumption of guilt; they are mere circumstances to be considered and weighed in connection with other proof with that caution and circumspection which their inconclusiveness when standing alone require."
 
 
 41
 See also United States v. Ratcliffe, 550 F.2d 431 (9th Cir. 1976). The majority's discussion of this issue passes too quickly over the point that evidence which shows a defendant's consciousness of guilt is also relevant as a circumstance from which the jury can infer guilt. See United States v. Heitner, 149 F.2d 105 (2d Cir. 1945). Proof of the use of a false name or of the fabrication of a false report is itself some affirmative evidence of guilt (although not alone sufficient to support a conviction), see United States v. Ford, 237 F.2d 57, at 63 n. 10 (2d Cir. 1956), vacated as moot, 355 U.S. 38, 78 S.Ct. 114, 2 L.Ed.2d 71 (1957). To the extent that it is some affirmative evidence of guilt, it has independent probative force. The weight to be given to such actions depends on the motives which prompted them. In this regard, it is important to reiterate that appellant's use of a false name and her fabrication of a false baggage report were purposeful attempts at concealment during the commission of a crime and not false exculpatory statements made in the hope of extricating herself from suspicious circumstances, as in Johnson and DiStefano.
 
 
 42
 In the present case, other strong evidence of guilt, which included her statements that she was to receive $1,000 in return for delivering the suitcase and that she had opened it but remained wholly unconcerned with its contents, furnished sufficient additional proof, together with the inferences which the jury was entitled to draw therefrom, to support its verdict of guilty. Moreover, the appellant did not provide any explanation for her use of a false name. See Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); Wilson v. United States, supra. The district court's instructions, while not couched in language precisely suited to indicate the probative weight which the jury should have accorded appellant's actions,[1] certainly did not leave the jury with the impression that it might convict her on the basis of the use of the false name and the fabrication of the false document alone.
 
 
 43
 With regard to the need for a balanced instruction on conscious avoidance of knowledge, the majority cites United States v. Bright, 517 F.2d 584 (2d Cir. 1975) and United States v. Esquer-Gamez, 550 F.2d 1231 (9th Cir. 1977), for the proposition that a jury instruction stating that knowledge of a fact can be inferred from reckless disregard of the truth, or from a conscious purpose to avoid learning the truth, must be balanced by a charge that actual belief in the non-existence of a fact negates knowledge. See also, United States v. Valle-Valdez, 554 F.2d 911 (9th Cir. 1977); United States v. Bernstein, 533 F.2d 775, 796 n. 17 (2d Cir.), cert. denied, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976).
 
 
 44
 In the Bright case, however, the defendant had testified at trial concerning the basis for her belief that the checks she received from an acquaintance were not stolen. In the light of this testimony and defense counsel's specific objection to the charge, the court held that it was prejudicial to Bright's defense for the trial court not to balance its charge on conscious avoidance of the truth, with an instruction that, if the jury found the defendant actually believed that the checks were not stolen, it should acquit. Cf. United States v. Jacobs, 475 F.2d 270 (2d Cir.), cert. denied sub nom. Lavelle v. United States, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).
 
 
 45
 Similarly, in the Esquer-Gamez case, defendants Rene Esquer-Gamez and Guillermo Platt-Lopez testified at trial that they believed that the packages of cocaine which they gave to Enrique Platt-Lopez were presents for his girlfriend and did not contain illegal drugs. Guillermo further testified that he asked Enrique what the packages contained, but he refused to explain. The trial judge failed, despite timely objection and a request by defense counsel, to charge the jury that if it found that Esquer-Gamez and Guillermo actually believed that the packages they handled did not contain drugs, then it must acquit them. On appeal, the court reversed their convictions, holding that on these facts, the trial judge's refusal to balance the charge as requested was prejudicial.
 
 
 46
 Unlike the defendant in the Bright case and the defendants in the Esquer-Gamez case, appellant did not attempt to explain to the jury the reasons for her lack of knowledge of the contents of the suitcase. Her statements to federal authorities at the time of her arrest showed that she was unconcerned about its contents and that she did not ask her friend Juan what was in the suitcase. As the majority points out, she never stated that she believed the suitcase contained some contraband other than heroin, such as jewelry or marijuana. Cf. United States v. Joly, supra, at 676. Therefore, the trial judge properly refrained from instructing the jury that it should acquit her, if it found that she believed the suitcase contained some contraband other than narcotics, and simply prefaced his instructions on conscious avoidance with a reference to appellant's defense. The charge, read as a whole, informed the jury that appellant's defense was that she lacked knowledge that the suitcase contained heroin; that knowledge was an element of the offense charged; and that, if the Government failed to prove each element beyond a reasonable doubt, it must acquit her. Cf. United States v. Gentile, 530 F.2d 461 (2d Cir.), cert. denied, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976). The charge was, in essence, the same as those approved by this court in United States v. Joly, supra, and United States v. Dozier, 522 F.2d 224 (2d Cir.), cert. denied, 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975).
 
 
 47
 "This court has consistently upheld use of the 'conscious avoidance' charge where defendants have denied wrongful knowledge in circumstances that should have apprised them of the unlawful nature of their conduct." United States v. Joyce, 542 F.2d 158, 161 (2d Cir. 1976), cert. denied sub nom. Teri v. United States, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 548 (1977). "Studied ignorance" of a fact may constitute awareness of so high a probability of the existence of a fact that a jury may properly infer knowledge. United States v. Joly, supra, at 675; see also, United States v. Kershman, 555 F.2d 198 (8th Cir. 1977). Failure to balance a jury instruction on a defendant's conscious avoidance of knowledge has not per se been held to constitute reversible error. On petition for rehearing in light of the decision in the Bright case, the court in Dozier held that, in the absence of " 'acute' objections to the claimed lack of balance and fairness in the portion of the charge on the subject of conscious avoidance of knowledge," the trial judge's instructions were not plainly erroneous. 522 F.2d at 228. In the present case, defense counsel did not object to the lack of, or request, a balanced charge on conscious avoidance of knowledge.
 
 
 48
 The majority's reliance on United States v. Valle-Valdez, supra, for the proposition that the trial judge should, at least, have balanced his instruction by advising the jury that unless it found that appellant had been "aware of a high probability" that her suitcase contained drugs, it should acquit her, is misplaced. Again, this case is distinguishable on the grounds that, unlike appellant, the defendant did testify concerning the basis for his lack of knowledge that his automobile contained contraband, and that he timely and specifically objected to the absence of a balanced charge. More importantly, however, the majority cites no cases in this circuit which have expressly adopted the "high probability" test announced by the Ninth Circuit in United States v. Jewell, 532 F.2d 697 (9th Cir.) (en banc ), cert. denied, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976). In fact, several decisions of this court have stressed that a charge to a jury, instructing it that knowledge may be inferred from a defendant's consciously shutting his eyes to avoid knowing whether or not he is committing unlawful acts, may be more useful to a jury than the "high probability" formulation espoused by the majority. United States v. Brawer, 482 F.2d 117, 128-9 (2d Cir. 1973); United States v. Jacobs, supra, at 287; see also, United States v. Lamont, 565 F.2d 212, 228 (2d Cir. 1977); United States v. Olivares-Vega, supra, at 830; United States v. Joly, supra, at 675. The majority concedes that appellant could hardly have believed that she would be paid $1,000 for transporting a suitcase full of dirty clothes. Her "conscious purpose to avoid enlightenment" or her "studied ignorance" of the contents of her suitcase constituted an awareness of so high a probability as to justify the inference of knowledge that it contained narcotics. United States v. Joly, supra, at 675. Therefore, the omission of a jury instruction that the jury must find that appellant was aware of a high probability that the suitcase contained contraband, see United States v. Valle-Valdez, supra, at 914, under the circumstances of this case was, if erroneous, entirely harmless.
 
 
 49
 The majority's discussion of the trial court's allegedly prejudicial instruction on the issue of knowledge of a specific narcotic stems from appellant's claim that she was afforded ineffective assistance of counsel because of her attorney's ignorance of the elements of an offense under 21 U.S.C. § 841(a)(1) which resulted in his pursuit of an illusory defense, i. e. that if the jury found that she believed the substance in the pouches was marijuana rather than heroin, then it must acquit her. The record does not support this claim. Counsel's summation made it clear to the jury that her defense was that, except for the blouse which she placed in the suitcase herself, she had no knowledge of its contents. She at no time claimed, and her attorney did not suggest, that she actually believed the suitcase contained some other contraband, such as stolen jewelry or marijuana. Instead, in an effort to support by negative inference her defense that she did not know what was in the bag, on several occasions during summation counsel pointed out to the jury that appellant did not state to the Government agents that she believed the pouches contained either jewelry or marijuana.
 
 
 50
 Both defense counsel's summation and the court's instructions to the jury made it plain that the theory of the defense was that appellant was a "mule," ignorant of the contents of the suitcase she carried, and one who was simply following instructions. That the trial judge charged the jury that the Government did not have to prove knowledge of a specific narcotic and that the jury requested further instructions from the court on whether appellant would be equally guilty if she possessed any other narcotic than heroin does not show that appellant was prejudiced by her counsel's references to marijuana. See LiPuma v. Commissioner, Department of Corrections, 560 F.2d 84 (2d Cir. 1977); United States v. Matalon, 445 F.2d 1215 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 93 (1971); cf. United States v. Carrigan, 543 F.2d 1053 (2d Cir. 1976).
 
 
 51
 It is reasonable to assume from the weight of the evidence against appellant, cf. United States v. Bubar, 567 F.2d 192, 202, n. 15 (2d Cir. 1977); including her expectation of receiving $1,000 for delivering the suitcase, her use of a false name, her opening of the suitcase, and the vinegar-like odor it emitted, that the jury had already dismissed her defense of a complete lack of knowledge of the suitcase's contents, but was unsure of what significance to attach to the possibility that she might have believed that it contained another narcotic. Before answering the jury's question concerning marijuana, the trial judge explicitly stated to the jury that it was his recollection that "there was no proof that there was any other narcotic involved in this case other than heroin." He then properly instructed the jury that the Government did not have the burden of proving knowledge of a specific narcotic, that knowledge of possession with intent to distribute any narcotic would be a sufficient basis for a finding of guilt, and that marijuana was a controlled substance within the terms of the statute, 21 U.S.C. § 841(a)(1). This instruction, given in response to questions from the jurors, did not "hopelessly muddle" the single issue of whether appellant knew that the suitcase contained narcotics. Cf. United States v. Christmann, 298 F.2d 651 (2d Cir. 1962).
 
 
 52
 Under these circumstances, the appellant was not deprived of a fair trial on the issue of whether she knew that her suitcase contained narcotics.
 
 
 53
 Accordingly, I would affirm the judgment of conviction.
 
 
 
 [1]
 Section 841 provides in part:
 "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." (Emphasis added).
 
 
 [2]
 The Government suggests that Judge Platt's correct charge regarding the inference that might be drawn from appellant's use of a false name dispelled any prejudice resulting from his erroneous instruction regarding the lost baggage report. However, the latter instruction stood uncorrected; as we said in United States v. Bright, 517 F.2d 584, 587 (2d Cir. 1975), "Though some may say, quite properly, that subtle nuances in a judge's charge fall on deaf ears, there is no assurance that this is so."
 
 
 [3]
 During his summation, the Assistant United States Attorney referred to appellant's use of an alias as evidence of guilt. (Tr. 258). Moreover, the appeal brief for the Government demonstrates its awareness that Judge Platt's charge tended to affirm the prosecution's theory of appellant's use of an alias. That brief argues:
 "(T)he sole issue in this case was whether or not Morales knew that her suitcase contained narcotics. . . . Thus, when Judge Platt stated that the fabrication of a document could be considered as probative of guilt, he was, for all intents and purposes, telling the jury that it was probative of a 'consciousness of guilt,' because that was the only issue to be decided." (p. 9).
 As this passage points out, Judge Platt's charge suggested that the jury could convict on the basis of a finding that appellant was conscious of her guilt. However, this was not "the only issue to be decided"; it was the Government's burden to prove knowledge, not a vague awareness of wrongdoing.
 
 
 [4]
 In cases involving the narcotics laws, as in Bright, we have recognized that a defendant may be convicted of a "knowing" violation without the jury's having found that he had "positive" knowledge that he was trafficking in drugs. Studied ignorance of a fact may constitute an awareness of so high a probability of the existence of the fact as to amount to knowledge of it. E. g., United States v. Joly, 493 F.2d 672, 675 (2d Cir. 1974). However, conscious avoidance may also amount to the kind of negligence or foolishness that does not constitute a basis for a "knowing" violation. Accordingly, Bright recognized that when a jury is made aware of the significance of evidence tending to establish conscious avoidance, it should also be made aware of "countervailing considerations," 517 F.2d at 587. Contrary to the Government's contention, the charges in previous drug cases were all more balanced than the one given here in the sense that they required attention both to conscious avoidance and the degree of the defendant's actual knowledge or belief. See United States v. Joly, supra, 493 F.2d at 674 (charge required finding "that the defendant believed that he had cocaine and deliberately and consciously tried to avoid learning (it)" or "(in) other words, . . . that he deliberately closed his eyes to what he had every reason to believe was the fact.") (emphasis added); United States v. Olivares-Vega, 495 F.2d 827, 830 (2d Cir.), cert. denied, 419 U.S. 1020, 95 S.Ct. 494, 42 L.Ed.2d 293 (1974) (using the Bright language); United States v. Dozier, 522 F.2d 224, 226 & n.2 (2d Cir.), cert. denied, 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975) (instruction informed the jury of the detailed conflicting inferences that might be drawn from evidence suggestive of conscious avoidance). By contrast, the instruction given here directed the jury to find appellant guilty if it found "a conscious purpose to avoid enlightenment by closing her eyes to the facts which should have caused her to investigate."
 
 
 [5]
 In Valle-Valdez, as in this case, there was evidence from which a jury could have inferred that the defendant knew that he was transporting drugs, including strong evidence of consciousness of guilt. Government agents testified that the passenger compartment in the defendant's car was permeated with the smell of marijuana; that the car was hard to drive because of the weight of the contraband in the trunk; and that the defendant became "noticeably nervous" when the officer asked him to open the trunk
 
 
 [6]
 Valle-Valdez' specific approval of an instruction to the effect that a defendant must be found to have been aware of a "high probability" that he was carrying some controlled substance is consistent with the law of this Circuit. This language is taken from a definition of knowledge in the Model Penal Code, § 2.02(7), which has been approved both by the Supreme Court, Leary v. United States, 395 U.S. 6, 46 n.93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Turner v. United States, 396 U.S. 398, 416 & n.29, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and by us, United States v. Matalon, 425 F.2d 70 (2d Cir.), cert. denied, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 76 (1970); United States v. Squires, 440 F.2d 859, 863 (2d Cir. 1971). While, as the dissent suggests, we have indicated some concern on two occasions about instructing the jury with the language of the Model Penal Code alone, United States v. Jacobs, 475 F.2d 270, 287 (2d Cir. 1973), cert. denied sub nom. LaValle v. United States, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1974) ("sole reliance on the ALI language might be improper"); United States v. Brawer, 482 F.2d 117, 128 (2d Cir. 1973) ("court here was careful not to rely entirely on the American Law Institute definition"), these statements were partial concessions to defendants who maintained that instructions tracking the language of this definition would enable juries to convict them on the basis of an insufficient showing of knowledge. We did not suggest that the "high probability" formulation was too strict from the government's standpoint i. e., that a defendant could be guilty of a "knowing" violation in the absence of knowledge of a high probability of the relevant fact. Indeed, our acceptance of the definition as a definition would appear to preclude such a position. Accordingly, when the issue is how to balance "conscious avoidance" language in a case where as in Valle-Valdez and this one the defendant denies all knowledge of contraband, this language does serve to focus the jury's attention on the extent of the defendant's actual knowledge and to assure that a conviction is not based on mere negligence, foolishness or stupidity. Of course, this is not to suggest that this language is indispensable in every case
 
 
 [7]
 In this case, unlike Valle-Valdez, defense counsel failed to object to Judge Platt's instruction on conscious avoidance. Although we held in United States v. Dozier, supra, 522 F.2d at 228, that it was not plain error to fail to use the language approved specifically in Bright, the lack of balance in the conscious avoidance charge here is greater than in Dozier, and the instruction's prejudicial effect was increased by other errors bearing on the jury's determination of the issue of knowledge
 
 
 [8]
 Defense counsel's closing argument included the following statements:
 "We are talking about heroin, she had specific knowledge that there was heroin in that bag. What else could she have been carrying; . . . But, did she really know there was heroin in there, could it, God forbid, have been another drug of serious consequence; . . .
 "Supposing there was something illegal in the bag, supposing there was something in the vernacular, not kosher or right; what happens if it would have been marijuana, it was a silver taped bag. Did she have the knowledge that it was heroin? (Tr. 272-73).
 "(W)ith a human being seeing masking tape, why would they infer there was heroin in there, what knowledge can one person have, what information could they have that there was heroin inside it and why not now, a one-a none (sic) controlled drug, but I am not saying this person knew there was another dangerous drug, but let's say how can you differentiate between this, this wasn't marijuana inside.
 "Now, I'm not bringing up this argument to be facetious or raise a red herring. I am saying to you, as Mr. Epstein and the special agents in this case proven the case beyond a reasonable doubt that Ms. Morales had specific knowledge that there was heroin." (Tr. 280-81).
 
 
 [9]
 Judge Platt's last instruction before dismissing the jury was as follows:
 "All right, ladies and gentlemen, the Government has requested a short additional instruction to which I believe they're entitled and that is, that the burden is not on the Government to prove knowledge of a specific narcotic. They don't have to prove knowledge of heroin as such, it's sufficient to prove possession with intent to distribute a narcotic, that is sufficient, and I so instruct you." (Tr. 317).
 
 
 [10]
 The judge's response to the jury somewhat confusing to us stated in part:
 "The first two questions apparently arise out of my last instruction, perhaps some confusion may exist in our last instructions to you. Bear in mind, again, here your recollection, it's your recollection that controls, but it my (sic) recollection that there was no proof that there was any other narcotic involved in this case other than heroin. The stipulated fact is the material involved was found in the suitcase was heroin and it wasn't marijuana or any kind of narcotics.
 "Now, it's your recollection that controls, but my recollection is that it is stipulated, it was entered into between the parties and agreed to, and you can look at that stipulation if you wish.
 "However, the last instruction I gave to you was, with respect to the knowledge on the part of the defendant. Knowledge I said was that it wasn't necessary that the Government prove that she knew it was heroin as distinguished from some other narcotics.
 "In other words, knowledge on her part that she was carrying an illegal narcotics in that bag or possessing it with intent to distribute it rather, was sufficient.
 "Your next question is, would marijuana be included as chemical matter, and I am not that sure of this, but I think marijuana may not be strictly a narcotic. However, it is a controlled substance; it is not listed in the control, in the same control schedule as heroin, as heroin is in schedule one and marijuana is something like schedule four. It is a controlled substance, while it may not be particularly a narcotic, it is a controlled substance." (Tr. 325-26).
 
 
 [11]
 Having decided that appellant must be retried, we need not reach her contention that her sentence was based on materially false assumptions concerning the degree of her cooperation with the authorities
 
 
 [1]
 The trial judge immediately followed his charge on fabrication of a false document with an instruction that, if the jury found that appellant had used a false name, it could infer her consciousness of guilt. This instruction substantially eliminated the possibility that the jury would give undue consideration to this evidence in its deliberations, especially in light of the fact that it was appellant's use of a false name which resulted in the fabrication of the lost baggage report